IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

K.H. a Minor, by and through her
parents and Legal Guardians, TYSON
HEADLEE AND KIRSTIN HEADLEE,
Individually; and KIRSTIN
HEADLEE, Individually,

         Plaintiffs,

     v.

CHICAGO URBAN AIR, LLC, d/b/a
URBAN AIR TRAMPOLINE AND
ADVENTURE,

         Defendant.

No. 22-cv-06494
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

K.H., a minor, was injured while playing "Wipeout," an attraction at an amusement park operated by Defendant Chicago Urban Air, LLC d/b/a Urban Air Trampoline and Adventure park (Urban Air). Plaintiffs K.H., by and through her Parents and Legal Guardians, Tyson Headlee and Kirstin Headlee, and Tyson and Kirstin Headlee, individually (collectively, the Headlees) sued Urban Air in state court asserting common law claims. R. 1-1,[1] Compl. Urban Air removed the case to this Court on the basis of diversity jurisdiction. R. 1, Not. Removal. Urban Air subsequently filed a motion to stay proceedings and compel arbitration (motion to

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

compel arbitration). R. 13, Mot. Compel. For the reasons that follow, the Court grants the motion to compel arbitration.

## Background

Urban Air operates an indoor trampoline and adventure park with numerous attractions. Compl. ¶ 4. One attraction, called the Wipeout, consists of two machine-operated bars that require participants to hop and/or duck under the bars as the bars rotate in a circle. *Id*. at ¶ 5. On April 1, 2022 Kirstin Headlee, and her daughter, K.H., a minor, visited Urban Air. *Id*. at ¶¶ 7; R. 29-11, K. Headlee Decl. ¶ 6. Before K.H. was permitted to participate in any of the park's attractions, an Urban Air employee informed Kirstin that she had to sign a "Release." K. Headlee Decl. ¶¶ 7–8. The Release was pre-drafted and presented on a kiosk display. *Id*. ¶¶ 7–11. The Release stated as follows:

> I, the Parent/Guardian, on behalf of myself and that of the minor(s) identified above, as applicable, have read the above Assumption of Risk, Waiver of Liability, and Indemnification Agreement and fully understand and agree to its terms. I understand that I am giving up substantial rights, including my right to sue, by executing this Agreement. I further acknowledge that I am agreeing to indemnify Urban Air, as provided above, for all claims the referenced minor may have against Urban Air. Lastly, I acknowledge that I am signing this Agreement freely and voluntarily, and intend my signature to constitute a complete and unconditional release of Urban Air for all liability due to (1) ordinary negligence of Urban Air and those parties named herein and (2) to the inherent risks of the activity, to the greatest extent permitted by the laws of the state in which the Urban Air is located. By signing below, the Parent or Court-Appointed Legal Guardian agrees that they are also subject to all the terms of this document, as set forth above.

R. 14-3, Release at 2.

The Release contained a Dispute Resolution provision, which stated in pertinent part:

> ARBITRATION. Any dispute or claim arising out of or relating to this Agreement, breach thereof, the Premises, Activities, … personal injury (including death), or the scope, arbitrability, or validity of this arbitration agreement ("Dispute") shall be brought by the parties in their individual capacity and not as a plaintiff or class member . . ., and settled by binding arbitration . . . .

Release at 1.

Kirstin signed the Release and Indemnification Agreement on her own behalf and on behalf of K.H. Release at 2; K. Headlee Decl. ¶ 15; R. 14-2 Davis Decl. ¶¶ 11–12. K.H. then participated in Wipeout. Compl. ¶ 10. While playing Wipeout, K.H. was hit by one of Wipeout's rotating bars, causing severe injuries. *Id.* ¶ 13.

The Headlees subsequently sued Urban Air in state court, asserting common law claims of negligence and premises liability, as well as a claim under the Illinois Family Expense Act. Compl. Urban Air removed the case to this Court on the basis of diversity jurisdiction. Not. Removal ¶ 8. Urban Air then filed a Motion to Stay Proceedings and Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* R. 13, Memo. Compel at 1. This fully briefed motion is before the Court.

## Legal Standard

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.* *"governs the enforcement, validity, and interpretation of arbitration clauses." Jain v. De Mere,* 51 F.3d 686, 688 (7th Cir. 1995). Under the FAA, arbitration agreements "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 740 (7th Cir. 2010) (quoting 9 U.S.C. § 2)). The FAA "reflects 'both a liberal federal policy

3

favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract.'" *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Janiga*, 615 F.3d at 740. "[A]rbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).

The party seeking to compel arbitration has the burden of establishing an agreement to arbitrate. 9 U.S.C. § 4; *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). Once the party seeking to compel has established an agreement, the party resisting arbitration bears the burden of identifying a triable issue of fact on the purported arbitration agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The resisting party's evidentiary burden is like that of a party opposing summary judgment. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* Like summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws reasonable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an

4

arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023).

Under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry v. Schien, Inc., v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) (cleaned up).[2]

Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay litigation, 9 U.S.C. § 3 and compel arbitration, *id.* § 4.

## Analysis

Urban Air argues that the Court should compel arbitration because it satisfies all three elements. The Court addresses each in turn.

## I. Whether Valid Arbitration Agreement Exists

"In determining whether a valid arbitration agreement exists between the parties, a federal court should look to the state law that ordinarily governs formation of contracts." *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015). Here, neither the Headlees nor Urban Air raise a choice-of-law issue. Instead, they both cite to Illinois law. Because neither party challenges the application of Illinois law to this dispute, the Court applies Illinois law. *Id*

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Urban Air contends that the first element—an agreement to arbitrate—is satisfied here, as Kirstin executed the Release, which included the arbitration provision. Memo. Compel at 6–7 (citing Release). The language of the Release, asserts Urban Air, makes clear that it applies to both Kirstin and her daughter, K.H. *Id.* (citing Release). The fact that K.H. is a minor, posits Urban Air, is of no moment, because Illinois public policy strongly favors arbitration as a means of resolving disputes. *Id.* at 7 (citing *Jensen v. Quik Int'l*, 820 N.E.2d 462, 467 (Ill. 2004)). Moreover, points out Urban Air, other jurisdictions have held that an agreement executed by a parent or legal guardian is enforceable on a minor's claims. *Id.* (citing, among other cases, *Hojnowski v. Vans Skate Park*, 901 A.2d 381, 392–94 (N.J. 2006); *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 405 (Fla. 2005)).

The Headlees counter that the Release's arbitration clause is not enforceable and therefore Urban Air's motion to compel arbitration must be denied for three reasons: (1) the circumstances in which the arbitration clause was signed and formed were procedurally unconscionable; (2) enforcement of the arbitration clause would not protect K.H., a minor's, interest and would violate K.H's constitutional right to a trial by jury; and (3) in the alternative, if the Court finds an agreement to arbitrate was formed, K.H. disaffirmed any obligation to arbitrate by filing this instant suit. R. 29, Resp. at 8.[3] The Court addresses each argument in turn.

---

[3]In response, the Headlees also contend that the Court must stay its ruling on Urban Air's motion to compel arbitration pending the magistrate judge's ruling on Urban Air's motion to stay discovery. Resp. at 6–7. Since the filing of the Headlees' response, Magistrate Judge Gilbert has granted Urban Air's motion to stay discovery, R. 30, so the Headlees' argument on this point is moot, as Urban Air points out in reply, R. 31, Reply at 2.

### A. Procedural Unconscionability

The Headlees first argue that the arbitration clause is unenforceable because it is procedurally unconscionable. Resp. at 8–11. Generally speaking, the doctrine of unconscionability seeks to prevent a sophisticated party with grossly unequal bargaining power from taking advantage of a less sophisticated party. *See Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006); *see also Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011). An arbitration agreement may be set aside where it is unconscionable. *See Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 261 (Ill. 2006). Contracts can be either procedurally or substantively unconscionable. *Razor*, 854 N.E.2d at 622. Here, the Headlees only argue procedural unconscionability. Resp. at 8–11. Under Illinois law, procedural unconscionability refers to a contract "where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor,* 854 N.E.2d at 622. Factors courts consider when determining whether procedural unconscionability exists include: "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Kinkle*, 857 N.E.2d at 278. Additionally, courts consider "the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability." *Id*. However, "mere disparity of bargaining

7

power is not sufficient grounds to vitiate contractual obligations." *Streams Sports Club, Ltd. v. Richmond*, 457 N.E.2d 1226, 1232 (Ill. 1983).

The Headlees argue the arbitration provision in the Release is procedurally unconscionable for three reasons. Resp. at 8–11. First, the Headlees point out that Kirstin was offered the Release, which contained the arbitration clause, on a "take it or leave it" basis. *Id.* at 9–10. Second, at no time before Kirstin signed the Release, did any Urban Air employee explain the Release or the rights that she and K.H. would be giving up by signing the Release. *Id.* at 10. Third, the text of the Release, including the arbitration clause, was in small print and Kirstin could not zoom in to enlarge the text. *Id.* Lastly, Kirstin did not have any ability to make any edits to the Release. *Id.* As such, reason the Headlees, Kirstin possessed no bargaining power and was pressured by an Urban Air employee to "hurry up" and sign the Release. *Id.* Kirstin, insist the Headlees, did not know that agreeing to the arbitration clause would bar her, and more specifically, K.H., from bringing suit. *Id.* at 11.

Urban Air argues that it had no obligation to explain the Release to Kirstin. R. 31, Reply at 4 (citing *Morgan v. Bill Kay Chrysler Plymouth*, 2002 WL 31133102, at *2 (N.D. Ill. July 17, 2002)). The Court agrees. Under Illinois law, one who signs a contract is presumed to have read it and understood it. *See IFC Credit Corp. v. Rieker Shoe Corp.*, 881 N.E.2d 382, 395 (Ill. App. Ct. 2007). Notably, the Headlees cite no authority in support of their proposition. Similarly, Kirstin's failure to read the Release does not make the Release procedurally unconscionable. *See id.*; *James v. McDonald's Corp.,* 417 F.3d 672, 677–78 (7th Cir. 2005) ("[A] party who had the

opportunity to read a contract, but did not, is bound by the contract terms."). Nor does the fact that it was offered to her on a take-it-or-leave basis—even when an Urban Air employee told her to "hurry up"—render the Release procedurally unconscionable. *See Kovelski v. SBC Capital Markets, Inc.*, 167 F.3d 361, 367 (7th Cir. 1999) (applying Illinois law and finding that "take-it-or-leave-it deal" and "disparity in the size of the parties entering into the agreement" does not invalidate arbitration agreement without "some wrongful use of . . . power") (cleaned up). Again, the Headlees do not cite any authority in support of this argument. As Urban Air points out, Kirstin could have walked away, but instead she signed the Release, thereby allowing her and K.H. to access the premises.

Finally, the Court agrees with Urban Air that the Headlees' arguments regarding the size of the font and Kirstin's inability to zoom in and out of or edit the Release do not render the Release procedurally unconscionable. Reply at 6 (citing *Davis v. Fenton*, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014) ("An arbitration clause does not need to be emphasized with any special font or typeface to prevent it from being procedurally unconscionable; it just needs to be conspicuous.") (collecting cases)). Here, the dispute resolution provision of the contract is on the first page of the contract (which is only two pages) and is identified by a separately numbered section and header ("6. DISPUTE RESOLUTION" with a subsection header stating "A. ARBITRATION"). Release at 1. The Court agrees with Urban Air that although the dispute resolution provision itself is not in bold typeface, it is readily identifiable given the headings and the fact that it falls between two other bolded paragraphs,

9

creating a visible distinction. Reply at 6 (citing Release; *Williams v. Planet Fitness, Inc.*, 2021 WL 1165101, at *4 (N.D. Ill. Mar. 26, 2021) (rejecting procedural unconscionability argument where contract was only two pages long, was organized with clearly labeled introductory titles, and arbitration provision was on first page).

The cases cited by the Headlees in support of their procedural unconscionability argument are distinguishable, as Urban Air points out in reply. Neither *Razor,* 854 N.E.2d at 623 nor *Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 411 & n.2 (Ill. App. Ct. 1980), involved an arbitration clause. *Razor* involved a disclaimer of consequential damages and *Frank's* involved a limiting clause of plaintiff's remedies. And in *Bain v. Airoom, LLC*, 207 N.E.3d 1015, 1024, 1027–28 (Ill. App. Ct. 2022), the court found the arbitration agreement to be unenforceable because it was substantively unconscionable. It found the manner in which the agreement was presented to the plaintiff bolstered its finding of substantive unconscionability, but it was not the crux of the court's ruling. *Id.*

All in all, the Court finds that the Headlees have failed to establish that the Release was procedurally unconscionable.

## B. Violation of Minor's Substantive Rights

Alternatively, posit the Headlees, should the Court find that an agreement to arbitrate was formed, arbitration should not be compelled because enforcement of the arbitration clause would violate K.H's constitutional right to a jury trial. Resp. at 11–13. The Headlees point out that Illinois has "strong public policy of protecting the interest of the minor" and the Court has a duty and discretion to protect the minor's

interest. *Id.* at 11 (citing *First Nat. Bank of LaGrange v. Lowrey*, 872 N.E.2d 447 (Ill. App. Ct. 2007); *Villalobos v. Cicero Sch. Dist. 99*, 841 N.E.2d 87 (Ill. App. Ct. 2005)).

The Headlees concede, however, that there is no Illinois case that addresses whether a parent or guardian may waive a minor's right to a jury trial in favor of arbitration clauses found in recreational releases. Resp. at 12. They cite to one out-of-state court finding that a parent cannot bind a minor child to an arbitration clause. *Id.* (citing *Troshak v. Terminix Int'l Co., L.P.*, 1998 WL 401693, at *5 (E.D. Pa. July 2, 1998)). Predictably, Urban Air disagrees, arguing that *Troshak* not only is outdated, but also has been rejected as reflecting an outmoded hostility to arbitration. Reply at 8 (citing *Doe v. Gregory Scott Stephen*, 2020 WL 12309616, at *8 (S.D. Iowa Mar. 4, 2020)). Urban Air also admits that no Illinois court has addressed this precise issue, but asserts that several state and federal courts have recognized that a minor's personal injury claim may be compelled to arbitration. *Id.*; Memo. Compel at 7–8 (citing *Hojnowski*, 901 A.2d at 392–94; *Glob. Travel Mktg.*, 908 So. 2d at 405; *Cutway v. S.T.A.R. Programs, Inc.*, 904 N.Y.S.2d 806, 807 (N.Y. 2010); *Leong by Leong v. Kaiser Found. Hosps.*, 788 P.2d 164, 169 (Haw. 1990); *Cross v. Carnes,* 724 N.E.2d 828, 836 (Ohio App. Ct. 1998)).

As an initial matter, as noted above the parties do not cite—nor is the Court aware of—any Illinois decision addressing this precise issue. It is worth briefly examining several of the out-of-state decisions cited by the parties that have addressed the issue. In *Hojnowski,* the minor was injured while skate boarding at defendant's facility. 901 A.2d at 383. On a prior visit to the facility, the minor's mother

had executed a release on the minor's behalf, which contained a clause agreeing to submit to arbitration any claims against the facility. *Id.* The New Jersey Supreme Court, citing New Jersey's public policy favoring arbitration as a means of dispute resolution, held that an agreement by a parent to arbitrate claims arising out of a commercial recreation contract was enforceable. *Id.* at 392–93. The court noted that a pre-injury agreement to arbitrate, unlike a pre-injury release of liability, does not require a minor to forego any substantive rights. *Id.* at 392. "Rather, such an agreement specifies only the forum in which those rights are vindicated." *Id.*

At the other end of the spectrum is *Troshak*, 1998 WL 401693. In *Troshak*, the minor's father signed a Termite Service Plan with the defendant, which contained an arbitration provision. *Id.* at \*2. The minor's parents, along with the minor, filed suit in state court—which was removed to federal court—alleging that the defendant negligently performed termite services at plaintiffs' residence, which resulted in personal injury to the plaintiffs and property damage to their home. *Id.* at \*1. In a case of first impression, the district court, relying on two previous federal court decisions holding that there is no authority for parents to execute a pre-injury release of liability on behalf of a minor, reasoned that "[i]f a parent cannot prospectively release the potential claims of a minor child, then a parent does not have authority to bind a minor child to an arbitration provision that requires the minor to waive their right to have potential claims for personal injury filed in a court of law. *Id.* at \*4–5. *But see Doe v. Gregory Scott Stephen*, 2020 WL 12309616, at \*8 (*Troshak* decision "appears to this court to reflect the outmoded hostility of federal courts to

12

arbitration of claims, rather than judicial determination of claims, which the Federal Arbitration Act was intended to eliminate").

The Court, however, need not wade into these unsettled waters, as the Court agrees with Urban Air that K.H. was an intended beneficiary of the contract and therefore bound to the arbitration provision. Generally, arbitration is a matter of contract, and a non-party cannot be required to arbitrate any dispute which he or she has not agreed to arbitrate. *Johnson v. Noble*, 608 N.E.2d 537, 540 (Ill. App. Ct. 1992). One exception to this rule and relevant here, is the third-party beneficiary doctrine. Under the third-party beneficiary doctrine, "[w]here it is shown that the signatories to the agreement intended that the nonsignatories were to derive benefits from the agreement and where the arbitration clause itself is susceptible to this interpretation, then arbitration is proper." *Id.* at 541. The third-party beneficiary doctrine applies to arbitration agreements. *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 882 N.E.2d 157, 180 (2008).

Here, Kirstin executed the Release for K.H.'s benefit. After Kirstin signed the Release, K.H. was allowed to participate in all of Urban Air's attractions, including Wipeout. Indeed, Kirstin was informed that K.H. could not participate in any of the attractions until Kirstin signed the Release. Had Kirstin not signed the Release, K.H. would not have been allowed to participate in the attractions at Urban Air. In short, it can hardly be disputed that Kirstin executed the Release for the direct benefit of K.H. Notably, the Headlees did not respond to this argument and therefore, waived

any response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

Admittedly, neither of the cases cited by Urban Air in support of application of the third-party beneficiary doctrine involve minor third-party beneficiaries. *See* Memo. Compel at 9–10 (citing *Tortoriello*, 882 N.E.2d at 180–81; *Smith v. Bank of Am., N.A.*, 2019 WL 11910946, at *2 (N.D. Ill. May 15, 2019)). However, as stated above, the Headlees failed to respond to this argument at all, let alone provide a cogent argument as to why the third-party beneficiary doctrine would not apply to a minor in this instance. *See* Resp. It is not the Court's role to make arguments for the parties. *See, e.g., Vertex refining, NV, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 374 F. Supp. 3d 754, 765 (N.D. Ill. 2019) ("It is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (cleaned up). Therefore, based on the authority and arguments before the Court, the Court finds that K.H. is a beneficiary to the Release and thus is bound by the arbitration provision. Such a finding comports with the strong policy favoring enforcement of private agreements to arbitrate disputes. *AT&T Mobility*, 563 U.S. at 339; *KPMG, LLP v. Cocchi*, 565 U.S. 18, 20–21 (2011).

## C. Disaffirmance of Arbitration Clause

The Headlees next argue that even if an arbitration agreement was formed, it cannot be enforced against K.H., a non-signatory to the agreement. Resp. at 13 (citing *Zurich v. Am. Ins. Co. v. Watts Indus., Inc.* 417 F.3d 682 (7th Cir. 2005)). True, Kirstin signed the Release on K.H's behalf, note the Headlees, but K.H., a minor, has

disaffirmed the contract by filing this lawsuit. Resp. at 13 (citing *A.D v. Credit One Bank, N.A.*, 885 F.3d 1054, 1062–63 (7th Cir. 2018); *Villalobos*, 841 N.E.2d 87). Not so, counters Urban Air, as the Release applies to K.H. Infancy, asserts Urban Air is a defense, not obstacle to formation, rather, it is an issue for the arbitrator to decide. Reply at 9 (citing *K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022)). As for *Credit One*, that case, submits Urban Air, is distinguishable as the decision turned on an interpretation of the language of a cardholder agreement and whether the minor was an "authorized user." *Id.* (citing 885 F.3d at 1059–61).

In *Credit One*, the credit card holder used her minor daughter's cell phone to access her account. 885 F.3d at 1058. The credit card company then attached the minor's cell phone number to her mother's account. *Id*. The account holder fell behind on the account and the credit card company repeatedly called the minor's cell phone in an attempt to collect the debt. *Id*. The minor, by and through her mother, filed a putative class action under the Telephone Consumer Protection Act (TCPA). *Id.* at 1057. The credit card company moved to compel arbitration based on a cardholder agreement between the credit card company and the minor's mother. *Id.* at 1058. The credit card company argued that the minor was an authorized user under the credit card agreement and thus her suit should be submitted to arbitration, per the agreement. *Id.* at 1059. The Seventh Circuit noted the principle that non-signatories are not bound to arbitration agreements. *Id.* at 1060. Arbitration agreements, explained the Seventh Circuit, will only be enforced against a non-signatory if the party seeking arbitration can show that an exception to the general rule applies. *Id.*

The Seventh Circuit concluded that the minor was not subject to the arbitration agreement, because under the terms of the arbitration agreement, to be an authorized user, the user must be at least fifteen years old, and a $19 fee imposed on the account holder for adding the user. *Id.* at 1061–62. Neither of those conditions were met by the minor and/or her mother. *Id.* The Seventh Circuit rejected the district court's conclusion that because the mother told her daughter to use the credit card to pick up the smoothies, the mother made the daughter an authorized user of the account. *Id.* at 1061.

The Court agrees with Urban Air that *Credit One* is distinguishable. Here, unlike in *Credit One*, K.H's claims are derived from her participation in and use of the activities and attractions at Urban Air, which was contingent upon her mother's execution of the Release. Reply at 10. Put another way, unlike the situation in *Credit One*, here the Release was executed for the benefit of the minor.

The Court agrees with Urban Air that K.H.'s infancy is a defense, not an issue of contract formation. *See* Memo. Compel at 9; Reply at 9. In *K.F.C.*, the plaintiff, a minor signed up for a Snapchat account. *K.F.C.*, 29 F.4th at 836. In order to open a Snapchat account, a person must agree to Snapchat's terms and conditions, which included an arbitration provision. *Id.* at 837. The minor plaintiff sued Snapchat alleging violations of the Illinois Biometric Privacy Act, and Snapchat moved to compel arbitration. *Id.* at 837–38. The district court ordered the parties to arbitration and the Seventh Circuit affirmed. *Id.* at 837, 839. In doing so, the Seventh Circuit rejected plaintiff's contention that the contract was void due to her age and that it

16

would be against public policy to enforce an arbitration agreement against her due to her youth, reasoning that, under Illinois law, the contract was not void, but voidable. *Id.* at 837–38. The court noted that "Illinois treats the age of the contracting parties as a potential defense to enforcement." *Id.* Meaning, explained the Seventh Circuit, the potential defense goes to the arbitrator.[4] *Id.* So too here. Whether KH disaffirmed the Release is an issue for the arbitrator.

Once a court finds a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to show that the dispute is not covered by the agreement. *Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 962 (N.D. Ill. 2013) (citing *Shearson/Am. Express, Inc., McMahon*, 482 U.S. 220, 226–27 (1987)).

## II.     Scope of Arbitration Provision

Urban Air asserts that the Headlees' claims fall within the scope of the Release. The Headlees do not address this element and have therefore, waived any response. *See Bonte*, 624 F.3d at 466. No matter, as the Court finds that the Headlees'

---

[4]For this reason, the Court finds the other cases cited by the Headlees to be distinguishable. Resp. at 13. In *Villalobos*, 841 N.E.2d at 94–96, the Illinois appellate court found that the filing of a lawsuit by a minor's father constituted a disaffirmance of a settlement agreement signed by minor's father that released her personal injury claims. Unlike here, the provision disaffirmed by the minor (via her father) in the lawsuit constituted the entire claim, whereas the Release relates to the forum where the Headlees must bring their claim. Such an issue can and should be resolved by the arbitrator. *K.F.C.*, 29 F.4th at 838. And *C.D. v. BNI Treatment Ctrs., LLC*, 2021 Cal. Super. LEXIS 3955, *2 (Cal. Super. 2021) is an unpublished out-of-state case, in which the court relied on a California statute to find that the minor was entitled to disaffirm the arbitration agreement. The California appellate court affirmed, but its decision was also unpublished and therefore non-citable. *See C.D. v. BNI Treatment Centers, LLC*, 2023 WL 194435 (Cal. Ct. App. Jan. 17, 2023); California Rule of Court 8.1115. This Court is bound to follow Seventh Circuit precedent, and here *K.F.C.* controls.

claims fall within the scope of the arbitration agreement. The arbitration provision of the Release provides in relevant part:

> Any dispute or claim arising out of or relating to this Agreement, breach thereof, the Premises, Activities, property damages (real or personal), personal injury (including death), or the scope arbitrability, or validity of this arbitration agreement ("Dispute") shall be brought by the parties in their individual capacity . . ., and settled by binding arbitration . . . .

Release at 1. The Headlees allege that K.H. visited Urban Air's premises and paid the admission price to enter the premises and use the attractions. Compl. ¶¶ 4, 6. They further allege that K.H. played Wipeout, which was located on Urban Air's premises. *Id.* ¶¶ 4, 10. Wipeout is a trampoline-based attraction, Davis Decl. ¶ 10, which is encompassed within the Release's definition of "Activities," Release at 1. The Headlees allege that K.H. was injured while in Wipeout. Compl. ¶ 13.

In sum, the Headlees allege that K.H. sustained a "personal injury" while engaging in an "Activit[y]" on Urban Air's "Premises," which falls squarely within the scope of the Release. Release at 1.

## III.   Refusal to Arbitrate

The Court finds that Urban Air satisfies this element, as it is undisputed that the Headlees have refused to arbitrate. *See* Compl.; Resp.

## Conclusion

For the reasons set forth above, the Court grants Urban Air's motion to compel arbitration [13] and orders the Headlees to pursue their claim via arbitration before an arbitration administrator as specified in the Release's arbitration provision. The case is stayed pending arbitration. *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727,

18

732 n.7 (7th Cir. 2005). The parties shall notify the Court of the disposition of the arbitration.

Dated: October 23, 2023

United States District Judge
Franklin U. Valderrama